IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-HC-2222-F

STACEY M. BROOKS,                      )
                                       )
            Petitioner,                )
                                       )
      v.                               )        ORDER
                                       )
TIMOTHY McCOY, Administrator,          )
Franklin Correctional Center,          )
                                       )
            Respondent.                )

This matter arises from the petition for writ of habeas corpus (D.E. # 1), pursuant to 28

U.S.C. § 2254, filed by Stacey M. Brooks ("Brooks" or "petitioner"). Petitioner is a state inmate

under sentence for convictions on counts of felonious operation of a motor vehicle to elude arrest

and being a habitual felon. State v. Brooks, 202 N.C.App. 771, 691 S.E.2d 767, 2010 WL 696907

*1 (N.C. Ct. App. March 2, 2010) (unpublished table decision). Presently before the court are

respondent's motion for summary judgment [D.E. # 9] and petitioner's response [D.E. # 12]. For

the reasons that follow, the court orders that the motion will be granted and the petition dismissed.

## STATEMENT OF THE CASE

I.     Background Facts

Brooks was convicted in the Superior Court of Hertford County on October 30, 2008. The

following facts underlying the crimes for which he was convicted and his subsequent trial are taken

from the opinion of the North Carolina Court of Appeals affirming his conviction.

At trial, the State's evidence tended to show the following. On 6 December 2007, Lieutenant Joseph Burgess of the Murfreesboro Police Department received an anonymous telephone call claiming that defendant was about to leave the Westwood subdivision and would be driving a white Lincoln Continental with a weapon in the car. Lieutenant Burgess knew defendant and was aware that defendant's driver's license had been revoked. Lieutenant Burgess and Detective Brian Pierce drove to a nearby intersection and parked where they could observe any vehicles exiting the subdivision.

Approximately three minutes after their arrival, the officers observed a white Lincoln Continental pull out of the subdivision. Both officers identified defendant as the driver of the vehicle and did not see anyone else in the car. Lieutenant Burgess pulled behind the vehicle and attempted to stop it. When, however, Lieutenant Burgess activated his blue lights, defendant fled. Lieutenant Burgess pursued defendant, and after an intense chase, defendant slowed down, opened the driver's-side door, jumped out of the still-moving car, and fled on foot. Lieutenant Burgess and Detective Pierce continued their pursuit on foot and ultimately caught and arrested defendant. A search of defendant's car did not turn up any weapons. Defendant was subsequently indicted for felonious speeding to elude arrest and being a habitual felon.

At trial, Antonne Sessoms testified on defendant's behalf, stating that he was with defendant just prior to defendant's leaving the subdivision that evening. According to Mr. Sessoms, defendant was not the driver of the Lincoln Continental, but rather was riding in the passenger seat. Mr. Sessoms testified that he did not know the man who was driving the car.

Defendant testified on his own behalf that the driver of the Lincoln Continental was a man named Charles Montague. Defendant told the jury that he asked Mr. Montague to let him out of the car during the chase, but Mr. Montague refused to do so. Defendant said that when the car came to a stop, he ran (in the opposite direction of Mr. Montague) because he had an outstanding warrant for failure to pay child support and did not want to go to jail.

The jury convicted defendant of felonious speeding to elude arrest, and he pled guilty to being a habitual felon. The trial court sentenced defendant to a presumptive-range term of 135 to 171 months imprisonment.

2010 WL 696907, *1-*2.

2

## II.    Procedural History

Petitioner appealed to the North Carolina Court of Appeals.  On appeal, he argued 1) "that the trial court committed plain error when it allowed the State to introduce into evidence the statement made by the anonymous caller to Lieutenant Burgess[;]" and 2) "that in calculating his prior record level, the trial court improperly used prior convictions that had been consolidated for judgment or arose from the same events and transactions as the three felonies that were used to establish defendant's status as a habitual felon." Brooks, 2010 WL 696907 at *2-*3. The Court of Appeals found no error and therefore affirmed. Id. Petitioner filed a *pro se* petition for discretionary review of the Court of Appeals' decision on April 7, 2010, which was denied on August 26, 2010. State v. Brooks, 364 N.C. 327, 700 S.E.2d 927 (N.C. 2010).

The record indicates that on September 13, 2010, petitioner filed a motion for appropriate relief ("MAR") in the Superior Court, which was summarily denied by an order dated January 5, 2011.  See Pet'r's Response to Mot. For Summ. J. ex. A [D.E. # 12-2].[1]  On August 5, 2011, petitioner filed both a petition for writ of certiorari and a motion for appropriate relief ("MAR") in the North Carolina Court of Appeals. See Resp.'s Supp. Mem. exs. 7 & 8 [D.E. # 10-9, 10-10]. On August 18, 2011, the Court of Appeals entered separate orders denying the petition for certiorari and dismissing the MAR. See Resp.'s Supp. Mem. exs. 10 & 11 [D.E. # 10-12, 10-13].

On November 14, 2011, petitioner filed the instant petition for writ of habeas corpus.  On

---

[1]  Neither party has provided the court with a copy of the September 13, 2010, MAR so that the court can assess the filing for purposes of addressing respondent's argument regarding petitioner's purported failure to exhaust his claims as well as any statutory tolling effect that should be attributed to this filing, given respondent's contention that this federal petition is untimely. Indeed, respondent's account of the "Summary and Nature of the Case" in his supporting memorandum omits any reference to this MAR. See Resp.'s Supp. Mem. [D.E. # 10] 1-2.

3

January 12, 2012, respondent filed his motion for summary judgment and supporting memorandum with exhibits. On February 1, 2012, petitioner filed his response to the motion for summary judgment. The matter is now ripe for ruling.

## DISCUSSION

I.    Standard of Review

    A.    Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    Section 2254(d)

The court's review of Petitioner's claims is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

4

of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Likewise, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. __, __, 130 S.Ct. 841, 849 (2010). See also Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) ("For a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable.") (citing Schriro v. Landrigan, 550 U.S.

5

465, 474 (2007)). Thus, while "deference [in the habeas context] does not imply abandonment or abdication of judicial review" and does not "preclude relief," Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), the deferential standard imposed by § 2254(d), as to both legal conclusions and factual determinations by the state courts, erects a substantial bar for state inmates seeking habeas relief in federal court.[2]

The statute "does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000). If the state court did not articulate the rationale underlying its adjudication, a federal habeas court must examine the record and the clearly established Supreme Court precedent to determine whether the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. Id. at 158. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at __, 131 S.Ct. at 784-85. Finally, the factual

---

[2]     In this vein, the Supreme Court recently observed as follows:

        If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no probability fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. __, __, 131 S.Ct. 770, 786-87 (2011).

findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears

the burden of rebutting this presumption by clear and convincing evidence. Fisher v. Lee, 215 F.3d

438, 445 (4th Cir. 2000).

Only after a petitioner establishes that the state court's adjudication of his claims was

"contrary to" or an "unreasonable application of" clearly established federal law, or was "based on

an unreasonable determination of the facts in light of the evidence," may a federal court proceed to

review a state court judgment independently to determine whether habeas relief is warranted. Rose

v. Lee, 252 F.3d 676, 689-90 (4th Cir. 2001). See also Frazer v. South Carolina, 430 F.3d 696, 718

(4th Cir. 2005) ("Because the state court's decision in this case was both contrary to and involved

an unreasonable application of clearly established federal law, the district court properly reviewed

Frazier's claim de novo."); Lynch v. Polk, 204 F. App'x 167, 170 (4th Cir. 2006) (unpublished

decision) ("If a legal or factual error of the degree specified in § 2254(d)(1) or (d)(2) occurred, then

a federal court has the obligation to conduct an independent review of the petitioner's claims to

determine whether the issuance of a writ is warranted.").

II.     Petitioner's Claims

Petitioner appears to raise the following three claims in the petition:

Ground I - Trial counsel "was totally unavailable to assist in preparing a defense for trial. Counsel wasn't involved in any pre trial hearings, motions, or anything."

Ground II - Trial counsel failed to challenge the State's introduction of purported "hearsay" into evidence and "stipulated to the wrong prior record level."

Ground III - The trial court "erred by using felonies used to establish habitual also to assign prior record points" in "violation of Due Process."

Pet. 5-8. In petitioner's "Memoranda in Support," which he attached to the petition, he clarifies his

allegations of ineffective assistance, arguing as follows:

> Ms. Tonza Ruffin failed to 'subject the prosecution's case to meaningful adversarial testing'; and performed well below an objective standard by (1.) Failing to object to inadmissible hearsay evidence. (2.) Failed to contest admission of opinion to establish a required element of the crime that had to proven beyond a reasonable doubt. (3.) Failed to instruct the court to add option to find defendant guilty of lesser included offense on verdict sheet. (4.) Failed to notify the court that the defendant's prior record points were not twenty (20), as she stipulated to, and that the prior record level wasn't six (6). (5.) Furthermore, counsel showed a reckless disregard for accuracy when she failed to inform the court that two felonies that were used to establish habitual felon status (Breaking and Entering) and (Burning Personal Property) were also illegally used to establish prior record points.

Pet'r's Mem. [D.E. # 1-1] 3-4.

III.    Analysis

A.    Procedural and affirmative defenses.

Respondent raises two procedural or affirmative defenses to petitioner's claims: lack of exhaustion and the statute of limitations. As to exhaustion, although he does not waive the defense, respondent asserts that this court, "notwithstanding [petitioner's] non-exhaustion," should address the merits of petitioner's claims "to put an end to this litigation." Resp.'s Supp. Mem. 4. Thus, the court will not rule on respondent's exhaustion defense at this time. See § 2254(b)(2). As to the timeliness issue, the court does not agree with respondent's calculation of the running of the limitations period.[3] However, because it is not necessary to resolve the statute of limitations issue

---

[3] In short, respondent's argument is predicated on his contention that petitioner's April 7, 2010, petition for discretionary review of the Court of Appeals's decision affirming his conviction was untimely under state law because, purportedly, it was due to the North Carolina Supreme Court on April 6, 2010. See Resp.'s Supp. Mem. 13-14 ("Petitioner's pro se PDR . . . was one day late, i.e., filed on the 36th day from the Court of Appeal's March 2, 2010 opinion and not the 35th day . . . ."). Respondent correctly states that generally a petition for discretionary review is due to the North Carolina Supreme Court thirty-five days after the Court of Appeals issues its decision affirming a conviction. Pursuant to respondent's theory, if the petition for discretionary review was

(continued...)

in order to dispose of the petition, the court pretermits a ruling on that affirmative defense and proceeds to consider the merits of the petition.

      B.     Merits.

           1.     Petitioner's ineffective assistance claims.

The majority of petitioner's claims allege that he received the ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution, as explicated in Strickland v. Washington, 466 U.S. 668 (1984). Thus, it is appropriate at this juncture to set forth the standards governing the court's analysis of such claims. The United States Court of Appeals for the Fourth Circuit recently described these standards as follows:

> To demonstrate ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Regarding the first prong, a "deficient" performance is one that falls "below an objective standard of reasonableness." Id. at 511. Petitioner must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Harrington, [562 U.S. at __], 131 S.Ct. at 787 (internal quotations marks omitted). See also Strickland v. Washington, 466 U.S. 668, 687 (1984) ("First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").

---

     [3](...continued)

untimely filed on April 7, 2010, then petitioner's conviction became "final" for purposes of the one-year statute of limitations set out in 28 U.S.C. § 2244(d)(1) on April 6, 2010, rather than ninety days after the North Carolina Supreme Court denied the petition on August 26, 2010. Respondent's calculations necessarily count March 2, 2010, in the thirty-five day period. However, Rule 27(a) of the North Carolina Rules of Appellate Procedure requires that, in "computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not included." Thus, excluding March 2, 2010, and counting thirty-five days from March 3, 2010, the petition was timely filed on April 7, 2010, and petitioner's conviction therefore did not become final until approximately 90 days after the petition was denied on August 26, 2010. See Jimenez v. Quarterman, 555 U.S. 113, 120 (2009).

[A court's] deferential assessment of counsel's performance must "include
[] a context-dependent consideration of the challenged conduct as seen from
counsel's perspective at the time . . . ." Wiggins, 539 U.S. at 523 (internal quotation
marks omitted). Further, we must resist the temptation to "second-guess counsel's
assistance after conviction or adverse sentence" and make "every effort . . . to
eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Indeed,
we must review with "scrupulous care, lest intrusive post-trial inquiry threaten the
integrity of the very adversary process the right to counsel is meant to serve."
Harrington, [562 U.S. at ___], 131 S.Ct. at 788 (internal quotation marks omitted).

Decastro v. Branker, 642 F.3d 442, 450 (4th Cir. 2011).

As to the second Strickland prong, prejudice, petitioner must show that "counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland,

466 U.S. at 687. Thus, petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

at 694. This showing "requires a substantial, not just conceivable, likelihood of a different result."

Cullen v. Pinholster, 563 U.S.___, ___, 131 S.Ct. 1388, 1403 (2011) (internal quotations omitted).

"The totality of the evidence before the judge or jury must be considered in making this

determination." Williams v. Ozmint, 494 F.3d 478, 484 (4th Cir. 2007) (internal quotation marks

omitted).

To the extent § 2254(d) might apply to any of petitioner's ineffective assistance claims, in

Harrington the Supreme Court discussed the interplay of the Strickland ineffectiveness standard and

the deferential review standard of AEDPA when a habeas petitioner alleges ineffective assistance

of counsel.

The pivotal question is whether the state court's application of the Strickland
standard was unreasonable. This is different from asking whether defense counsel's
performance fell below Strickland's standard. Were that the inquiry, the analysis

10

would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, *supra*, at 410. A state court must be granted deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

. . .

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. __, __, 130 S.Ct. 1473, 1485 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id. at 689; see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles[ v. Mirzayance, 556 U.S. __, __, 129 S.Ct. 1411,1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at __, 131 S.Ct. at 785, 788 (emphasis in original).

a. Petitioner's general ineffectiveness claim.

In ground one of the petition, petitioner claims that "[a]fter being arrested and over a span of 305 days, appointed counsel was totally unavailable to assist in preparing a defense for trial.

11

Counsel wasn't involved in any pre trial hearings, motions or anything. On 22 of October 08, I filed a 'motion to dismiss charges due to insufficient evidence' on my own behalf." Pet. 5. To the extent petitioner intends this as a sort of general or cumulative claim of ineffective assistance distinct from the discrete allegations he raises elsewhere in the petition and supporting "Memoranda," such claim fails. Petitioner fails to identify any specific "pre trial hearing" which his attorney failed to attend. Nor does petitioner identify any pre trial motion which counsel should have filed.[4] Petitioner's conclusory and unsupported allegation that counsel was "totally unavailable" is not sufficient. Only in very constrained circumstances, amounting to "the complete denial of counsel," will a claim of ineffective assistance prevail without requiring the petitioner to "show how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); id. at 666 ("This case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel. The criteria used by the Court of Appeals do not demonstrate that counsel failed function in any meaningful sense as the Government's adversary. Respondent can therefore make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel.").

There are no "surrounding circumstances" apparent in the record which indicate that plaintiff could not have received the effective assistance of counsel. On the contrary, it is clear from the record in this case that counsel's strategy focused on securing for petitioner a favorable plea offer, but that petitioner simply refused to plead. Prior to trial, counsel raised this issue with the trial court:

---

[4] To the extent petitioner implicitly faults counsel for failing to file a motion similar to his motion to dismiss his felonious speeding to elude arrest charge on the basis of insufficient evidence which he filed *pro se*, the subsequent jury verdict convicting him of that charge illustrates that such a motion would have been futile as the evidence was plainly sufficient.

Ms. Ruffin: In an effort to be cautious based upon past experiences, Your Honor, I feel like I need to make a record of the fact that I have had full discussions with my client, Mr. Brooks, regarding plea offers made by the State, sat down with him and extensively went over the offer that was being made by the State to make sure he understood where we were and my client indicated to me that he did not wish to accept the plea offer that was being made by the State.

I feel again like this is necessary because I do not want a situation where in the future, if this does not turn out to be favorable for Mr. Brooks, I receive some information that I haven't fully discussed the plea offer with him. So I would ask the Court to make the appropriate inquiry.

Trial Transcript ("Tr.") 20, Resp.'s Supp. Mem. ex. 17 [D.E. # 10-19].[5] Petitioner thereafter confirmed to the presiding judge that his attorney had conveyed a plea offer to him "which would be something significantly less than the maximum possible sentence that you could receive if you were convicted of these charges," but that he nevertheless wished to proceed to trial. Tr. 20-21. As for the trial itself, counsel mounted a reasonable defense considering the nature of the charges against petitioner and the strong evidence against him. Counsel sought to impeach one of the testifying officers and otherwise asked questions of the officer which at least implied that petitioner may not have been the driver. However, the officer was adamant that he identified petitioner, with whom he was already familiar, as the driver, that he did not observe anyone else in the car, and that, moreover, he observed petitioner abandon the vehicle from the driver's side. Counsel also presented testimony from a witness, a jail inmate, who claimed that he observed petitioner in the passenger side

_____

[5] The reason counsel pursued this strategy is also clear from the record. Petitioner was charged with felonious speeding to elude arrest. The state presented only two witnesses to prove its case, consisting of the testimonies of the two officers who initially identified petitioner as the driver of the vehicle, sought to stop the vehicle, pursued the vehicle for roughly ten to twelve miles after it fled at high rates of speed, and finally apprehended petitioner after he abandoned the car and fled on foot. See Tr. 22-68. Undoubtedly, counsel perceived little chance that a jury would disbelieve the officers' straightforward testimonies, especially in favor of the testimony of petitioner himself or his lone other witness, a fellow inmate at the jail.

of the vehicle, with an unknown driver, prior to the chase. Tr.71-82. Finally, despite counsel's own

advice, petitioner also testified at the trial, stating that he was a passenger in the vehicle during the

chase and that the driver refused to allow him to exit the as he had requested. Tr. 96-97. Of course,

petitioner's decision to testify caused defense counsel to solicit petitioner's testimony about his

extensive criminal record, presumably to introduce this evidence prior to cross-examination in hopes

of mitigating its impact on the jury. Tr. 88-91. Moreover, petitioner's testimony also featured his

curious, if not damning, explanation that he did not give any statement to the arresting

officers–despite his supposed innocence–because he did not want to incriminate himself. Tr. 101.

Ultimately, it is clear that, notwithstanding petitioner's discrete allegations of attorney error

which will be addressed below, given the nature of petitioner's charge and the strength of the

evidence against him, counsel reasonably endeavored to resolve this matter by obtaining a favorable

plea agreement for petitioner. When petitioner refused the plea deal offered him, counsel then

presented the jury with testimony hoping to persuade the jury that petitioner was the driver of the

fleeing car. Unsurprisingly, the jury did not credit this testimony and petitioner was convicted. In

no sense, however, can it be argued that counsel was so "totally unavailable" that petitioner was

completely deprived of counsel or that counsel did not serve as an adversary to the State in this case.

Cronic, 466 U.S. at 659-66. Accordingly, petitioner's general ineffective assistance claim is without

merit and he therefore may "make out a claim of ineffective assistance only by pointing to specific

errors made by trial counsel." Id. at 466.

> b.   Petitioner's specific ineffective assistance claims.

> 1.   Counsel's failure to object to supposed "hearsay."

Petitioner first claims that counsel failed "to object to inadmissible out-of-court statement

14

'hearsay' that was offered into court as substantive evidence." Pet'r's Mem. 3. The supposed "hearsay" petitioner references in his brief consists of Officer Burgess's testimony that he "received a phone call approximately right before 5:00 and it was a lady talking and she told me that Stacey Brooks was getting ready to leave Westwood Subdivision on Irving Road and he would be driving a white Lincoln Continental and he supposedly had a weapon in the car." Tr. 25.

In North Carolina, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801. As the Court of Appeals determined, Officer Burgess offered this testimony not to establish "the truth of the matter asserted, but rather to explain why [he] drove to the location where defendant was later seen driving . . . ." Brooks, 2010 WL 696907 *2. See Tr. 25 (Burgess is asked, "How was it that you ended up coming into contact with [petitioner] on December 6, 2007?"). Thus, the statement is not inadmissible hearsay and, more importantly for purposes of this claim, counsel was not deficient for failing to raise a frivolous objection on hearsay grounds and petitioner cannot show prejudice flowing from the failure to object. This claim is without merit and is due to be denied.

2.     Counsel's failure to object to "opinion" evidence.

Petitioner argues that counsel erred in failing to "contest admission of opinion to establish a required element of the crime that had to [be] proven beyond a reasonable doubt." Pet'r's Mem. 3. Petitioner offers no additional argument or context for this claim. In any event, the "opinion" which petitioner references is Officer Burgess's testimony that petitioner was driving "right at speeds of 115 [miles per hour]." Tr. 32. Petitioner cites to no authority for his proposition that Officer Burgess should have been prohibited from testifying about his observation and estimation of the

15

speed of petitioner's vehicle. Nor does petitioner provide any basis for questioning the veracity of Officer Burgess's testimony. Officer Burgess simply testified about his estimation of the vehicle's speed based on his "training in estimation of speed of vehicles" and his observation of his own speed while "pacing" petitioner's vehicle during the chase. Tr. 32. Without some showing by petitioner that this testimony was somehow unreliable or otherwise subject to exclusion at trial, petitioner cannot show deficient performance by counsel or that he was prejudiced by counsel's failure to object. Accordingly, this claim is without merit and is due to be denied.

> 3.    Counsel's failure to request a jury charge on lesser included offenses.

Petitioner next claims that counsel was ineffective in failing "to instruct the court to add option to find defendant guilty of lesser included offense on verdict sheet." Pet'r's Mem. 3. Once again, petitioner does not offer any additional argument or context for this claim. In North Carolina, a trial court must instruct the jury on a lesser included offense "only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." State v. Millsaps, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). Importantly, "[i]f the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those elements other than defendant's denial that he committed the offense, defendant is not entitled to an instruction on the lesser offense." State v. Smith, 351 N.C. 251, 267-68, 524 S.E.2d 28, 40 (2000).

Petitioner was charged and convicted of feloniously operating a motor vehicle to elude arrest. This required the State to prove that he operated a motor vehicle on "a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer," as well as at least two

16

additional statutorily enumerated aggravating factors, including, *inter alia*, that petitioner exceeded the speed limit by more than fifteen miles per hour, that petitioner operated the vehicle recklessly as proscribed by a separate statute, and that petitioner was driving while his license was revoked. See N.C.G.S. § 20-145.5 (a) and (b)(1), (3), and (5). Officer Burgess' testimony abundantly established at least two of these aggravating factors, and there was no evidence to negate any of these elements other than petitioner's own "denial that he committed the offense." Thus, petitioner was not entitled to an instruction on the lesser included offense of misdemeanor operation of a motor vehicle to elude arrest, Smith, 351 N.C. at 267-68, 524 S.E.2d at 40, and counsel was not deficient in failing to request such an instruction and, moreover, petitioner cannot show prejudice flowing from counsel's failure to request the instruction. Accordingly, this claim is without merit and is due to be denied.

> 4. Counsel's failure to object to the computation of petitioner's prior record level.

Petitioner next claims that counsel "failed to notify the court that defendant's prior record points were not twenty (20), as she stipulated to, and that the prior record level wasn't six (6)." Pet'r's Mem. 3. The basis for petitioner's claim appears to be his contention that in two instances the trial court improperly "divided two felonies that were used to establish habitual felon status to also assign prior conviction points with these same two felonies," in violation of North Carolina law. Pet'r's Mem. 6. Specifically, petitioner argues that his convictions for "felony larceny" and "breaking and entering," as well as separate convictions for "burning personal property" and "larceny of a motor vehicle," were improperly "divided" for purposes of counting toward both his habitual felon status and his prior record level, despite the fact that in both instances the crimes

17

"constructively constitute one felony." Pet'r's Supp. Mem. 6.

Petitioner raised the purported legal error underlying this ineffective assistance claim on direct appeal. See Brooks, 2010 WL 696907 *3. The Court of Appeals determined that prior precedent of that court was "controlling in all aspects" of the claim and therefore found no error. That prior precedent, in pertinent part, held that nothing in the relevant North Carolina sentencing laws "prohibit[s] the court from using one conviction obtained in a single calendar week to establish habitual felon status and using another *separate* conviction obtained the same week to determine prior record level." State v. Truesdale, 123 N.C.App. 639, 642, 473 S.E.2d 670, 672 (N.C. Ct. App. 1996). Nevertheless, petitioner appears to assert that his claim differs from the principle recognized in Truesdale in that he is challenging the so-called "division" or "splitting" of two convictions which are based on ostensibly the same conduct, not just alleging error based on the treatment of convictions obtained in the same week. Thus, he accuses both respondent and the state courts of "avoid[ing] the exact nature of the core issue by 'mischaracterizing' the two distinct 'plain errors' that occurred." Pet'r's Reply 7. However, the North Carolina Court of Appeals has already rejected this argument as well. See State v. Johnson, 166 N.C.App. 281, 603 S.E.2d 167, 2004 WL 1964889 *1 (N.C. Ct. App. Sep. 7, 2004) (unpublished table decision) ("In the instant case, the convictions at issue are two separate convictions. The statute in no way prohibits the trial court from taking two separate convictions based on the same criminal conduct and using one conviction to establish habitual felon status and the other to calculate prior record level points."). Given the state appellate court's determination that this claim lacks merit under North Carolina law, this court fails to perceive how counsel could have been deficient for failing to raise this objection. More importantly, though, the Court of Appeals' ruling makes clear that petitioner was not prejudiced by counsel's failure to

18

raise the objection because there is no reasonable probability that, had counsel raised the objection, the result of the proceedings would have been different.

Furthermore, petitioner does not appear to allege, and he does not cite to any authority in support of such a proposition, that the state court's counting of his various felonies for sentencing purposes somehow amounted to an independent violation of his federal constitutional rights to which counsel should have objected. To the extent petitioner is contending that his convictions for separate felonies flowing from the same events amounts to a violation of his constitutional protection against double jeopardy, such claim is without merit. It is clear that the convictions which petitioner complains were improperly "divided"–namely "felony larceny" and "breaking and entering" in one instance and "burning personal property" and "larceny of a motor vehicle"in the other–were for separately defined crimes requiring proof of different elements to support the convictions. <u>See</u> N.C.G.S. §§ 14-72 ("felony larceny"), 14-54(a) ("breaking and entering"), 14-66 ("burning personal property"), and 14-72(a) ("larceny of a motor vehicle"). As such, his convictions on those separate offenses, even if they stemmed from the same conduct, did not amount to a double jeopardy violation. <u>See United States v. Martin</u>, 523 F.3d 281, 291 (4th Cir. 2008). Moreover, petitioner fails to cite to any authority holding that the Constitution forbids a state to count convictions for separate offenses, even if stemming from the same conduct, for purposes of offense level and career or habitual felon status. Indeed, as argued by respondent, "there is no federal constitutional authority prohibiting separate felony convictions, even those arising in the same calendar week, arising out of the same transaction or occurrence, and/or consolidated for judgment, from being used to attain

19

habitual felon status and calculate prior record level points." Resp.'s Mem. 6.[6] Accordingly, this claim of ineffective assistance is without merit and is due to be denied.

5.      Counsel's "reckless disregard for accuracy."

Petitioner's final discrete claim of ineffective assistance alleges that counsel "showed a reckless disregard for accuracy when she failed to inform the court that two felonies that were used to establish habitual felon status (breaking and entering) and (burning personal property) were also illegally used to establish prior record points." Pet'r's Supp. Mem. [D.E. # 11-1] 3-4. The indictment charging petitioner with achieving the status of a habitual felon, a copy of which petitioner included with the petition, indeed indicates that "breaking and entering" and "burning personal property," along with "larceny from a person," were the prior predicate felonies relied upon by the State to establish the elements of the charge. See Indictment, Pet'r's Supp. Mem. "Exhibit B" [D.E. # 1-3]. However, none of these convictions are among the listed convictions on the worksheet, also provided by petitioner, which was utilized by the trial court to calculate petitioner's offense level at the time of sentencing. See Worksheet Prior Record Level for Felony Sentencing,

---

[6]    The lack of a federal constitutional hook as to this claim is further underscored by petitioner's own argument in his reply brief. He states that [t]his case is about 'construction.' Leaving semantics aside, and depending on historical construction and interpretation, the facts become clear and inescapable. The trial court erred by employing an 'unreasonable application' Id. (d)(1), of N.C.G.S. 14-7.6, when sentencing the petitioner." Pet'r's Reply [D.E. # 12] 7. Of course, petitioner's apparent attempt to graft the "unreasonable application" standard of § 2254(d)(1) into this claim is unavailing. That standard is explicitly concerned only with the state courts' application of "clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1) is not concerned with, and federal habeas relief is not available for, a state court's supposedly "unreasonable application" of a state sentencing law like, in this instance, N.C.G.S. § 14-7.6. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citations and quotations omitted) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conduct habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Pet'r's Mem. "Exhibit C" [D.E. # 1-3]. The worksheet does include the offenses which petitioner claims stemmed from the same conduct and therefore were "constructively one felony" that was improperly "divided" from those listed in the indictment. Id. However, for the reasons stated above, counsel cannot now be faulted for failing to object to the inclusion of those offenses in petitioner's offense level because the state court made clear on direct appeal that the inclusion of those offenses did not offend North Carolina law and there is no independently cognizable federal constitutional violation flowing from the state court's actions. Thus, counsel was not deficient for failing to raise the objection asserted by petitioner and petitioner cannot show the requisite prejudice. This claim is without merit and is due to be denied.

        2.      Petitioner's "due process' claim.

Petitioner's final claim is that his trial and sentence resulted in a violation of his due process rights. Petitioner's due process claim is predicated on the underlying theory he argued in support of his final two ineffective assistance claims–that the same convictions were improperly utilized under North Carolina for the purposes of both establishing his habitual felon status and his prior record offense level. Pet'r's Supp. Mem. 5-6. He alleges that the trial court's supposed double counting of his convictions constituted an "abuse of discretion," and that his resulting sentence "in excess of the statutory minimum" somehow was a violation of "'Due Process' of the law." Id. at 6. As set forth above, the trial court's actions were consistent with North Carolina law as construed by North Carolina's appellate courts. Thus, petitioner's claim that the trial court committed an "abuse of discretion" is without merit. Furthermore, because there is no separate federal constitutional claim flowing from the state courts' purported misapplication of state sentencing law, and because petitioner was afforded the opportunity to challenge the perceived state court error on appeal, there

is no "due process" violation. Finally, to the extent this claim was exhausted in the state courts and § 2254(d) applies, for all of the reasons set forth above, habeas corpus relief is not available to petitioner because the state court's decision denying this claim on direct appeal is not contrary to or an unreasonable application of federal law, and it is not based on an unreasonable determination of the facts before the state courts. This claim is without merit and is due to be denied.

C.      Certificate of Appealability

Having determined that respondent is entitled to summary judgment and the petition is due to be dismissed, the court must now consider whether petitioner is entitled to a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the petition in light of the applicable standards, the court finds that reasonable jurists would not find the court's treatment of the petition debatable or wrong and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the reasons stated above, respondent's motion for summary judgment [D.E. # 9] is

22

GRANTED and the petition is DISMISSED. The court DENIES a certificate of appealability. The

clerk of court is DIRECTED to close this case.

SO ORDERED. This the 21 day of August, 2012.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge